## GOFFINET ET AL., DEMANDANTES Y APELANTES, *v.* POLANCO, DEMANDADO Y APELADO.

APELACIÓN procedente de la Corte de Distrito de Humacao en pleito sobre crédito refaccionario garantizado con hipoteca, etc., e *injunction pendente lite.*

No. 2682.—Resuelto en junio 20, 1922.

*Injunction* PARA SUSPENDER EJECUCIÓN DE SENTENCIA — ALEGACIONES NECESARIAS.—La sección cuarta de la Ley de *Injunctions,* relativa a la posibilidad de la suspensión de los procedimientos por un *injunction,* no se refiere estrictamente o de un modo restringido a las actuaciones que quedan terminadas con la rendición de la sentencia final sino también a las actuaciones después de la sentencia, pero siempre que se alegue que se hubiera obtenido dicha sentencia mediante fraude, error, accidente o sorpresa, o que existiera la confusión o conflicto de reclamaciones de la propiedad que estuviere en ejecución.

ID.—ASEGURAMIENTO DE SENTENCIA.—En el presente caso los demandantes solicitaron *injunction pendente lite* para impedir que el demandado prosiguiera la ejecución de sentencia dictada a su favor y contra los ahora demandantes en otro pleito resuelto anteriormente por la misma corte, fundados en que si el demandado la ejecuta sin esperar a la resolución del pleito principal en que se pide el *injunction,* los peticionarios demandantes quedarán sin remedio para compensar su reclamación contra el demandado, la cual excede del importe de la sentencia en trámite de ejecución. *Se resolvió:* que el remedio adecuado no era el *injunction* sino la Ley sobre Aseguramiento de Sentencias, aprobada en marzo 1, 1902. La sección 2 de dicha ley establece las reglas a que se ha de ajustar el aseguramiento. Algunas de esas reglas surten el mismo efecto que una orden de *injunction* y llenan la misma finalidad, y además de especificarse en sus disposiciones los casos a que son aplicables, se establece por la regla (*h*) una regla general que cubre los casos que no estuvieren previstos por las reglas anteriores y en donde la corte inferior tiene un poder discrecional y equitativo para adoptar las medidas procedentes para asegurar la efectividad de una sentencia, caso de prosperar la acción que se ejercita.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. H. G. Molina.*

Abogados del apelado: *Sres. A. Sarmiento y J. Puig.*

EL JUEZ ASOCIADO SR. FRANCO SOTO, emitió la opinión del tribunal.

Este es un caso en apelación sobre una petición de *injunction pendente lite* que se ha originado en la Corte de Distrito de Humacao. En la demanda se alegan como hechos

esenciales para sostener el *injunction* y que transcribiremos de una manera concisa, los siguientes:

Que el demandado es, y el día 27 de marzo de 1914 era, dueño de la finca que queda descrita en la demanda;

Que con anterioridad al día 27 de marzo de 1914 el demandado había celebrado dos contratos con la Societé Anonymé des Sucreries de Saint Jean, dueña de la Central Santa Juana, sobre la siembra y molienda de cañas, y al mismo tiempo habían celebrado otros contratos para la refacción de dichas cañas, y que en la mencionada fecha de marzo 27, 1914, los demandantes y demandado celebraron un nuevo contrato por escritura pública, en la cual, después de describir la mencionada finca del demandado, se hacen constar los siguientes extremos: que para el cultivo de la finca del demandado habían celebrado dos contratos sobre siembra y molienda de cañas, uno en 11 de abril de 1912 y otro en 17 de julio de 1912, y para atender a las siembras y mejoramiento de las cañas celebraron un contrato de refacción otorgado en escritura pública en 11 de abril de 1912 y presentado al registro para su inscripción; que entre demandantes y demandado se liquidó de conformidad en 17 de marzo de 1914 la cuenta corriente ascendente el saldo a la suma de $15,725.55, pero haciéndose necesario adelantar más dinero al demandado por los demandantes, se convino aumentar el crédito refaccionario a la suma de $14,274.45, que con la suma anterior adeudada, da un total de $30,000, por cuya suma, intereses convenidos y la cantidad que se señala para costas el demandado constituyó hipoteca voluntaria a favor de los demandantes sobre la finca ya antes referida y por el término y condiciones señalados en la demanda con las letras "*a*", "*b*", "*c*", "*d*", "*e*", "*f*", y "*g*", y que no es necesario transcribir para los efectos del *injunction* que se solicita;

Que los demandantes debidamente cumplieron con todas cuantas obligaciones asumieron en virtud del mencionado contrato, anticipando las cantidades que el demandado tenía de-

recho a percibir y también haciéndole otros diversos anticipos que excedieron en mucho a lo que los demandantes estaban obligados a anticipar bajo las condiciones del citado contrato; que los demandantes abonaron a la cuenta del demandado el precio de venta de los azúcares del demandado y aún con todos dichos abonos, al vencerse el contrato en primero de agosto de 1917, quedó un saldo en favor de los demandantes ascendente a $18,286.46;

Que se acompaña a la demanda y se hace parte de la misma un estado detallado de la cuenta corriente y que el saldo de dicha cuenta, como antes se ha dicho, en primero de agosto de 1917 ascendía a $18,286.46, y con intereses calculados de acuerdo con el mencionado contrato, dicho saldo en primero de agosto de 1921 ascendía a $26,773.22, cuya suma el demandado adeuda a los demandantes, con intereses a razón del diez por ciento;

Que en los primeros días de agosto de 1917, los demandantes y el demandado cotejaron todas y cada una de las partidas, bien de cargo o de abono, y que el demandado estuvo conforme con dicha cuenta, con excepción del cálculo de intereses, si bien los demandantes alegan que el cálculo de intereses es correcto y de acuerdo con el contrato;

Que a pesar de ser absolutamente correcta y exacta la cuenta corriente, el demandado se ha negado fraudulentamente a reconocer de una manera expresa su certeza;

Que el demandado no ha pagado a los demandantes el referido saldo de dicha cuenta refaccionaria ni ninguna parte del mismo, a pesar de haber sido requerido a dicho efecto;

Que los demandantes en 24 de agosto de 1917 establecieron ante la Corte de Distrito de Humacao demanda por el procedimiento especial de la Ley Hipotecaria para la ejecución del mencionado crédito hipotecario de refacción, y que en octubre 9 de 1917 el demandado presentó una demanda ante la misma corte sobre nulidad de dicho procedimiento ejecutivo hipotecario, en cuya acción recayó sentencia a favor

del demandado y en contra de los demandantes, en 21 de mayo de 1919, por la cual se decretó la nulidad del procedimiento ejecutivo hipotecario, nulas y sin ningún efecto las inscripciones por razón de dicha ejecución y se condenó además a los demandantes a satisfacer al demandado en concepto de indemnización por daños y perjuicios la suma de $9,923, con las costas; que en el mismo pleito sobre nulidad la corte inferior en 14 de septiembre de 1921 ordenó la ejecución de dicha sentencia para que se requiriera a los demandantes a entregar al demandado la mencionada cantidad de $9,923 con intereses legales; y que el día 28 del mismo mes la corte amplió dicha orden ordenando que el marshal requiriera a los demandantes para que entregaran los $19,202 que fué el importe del remate de la finca hipotecada, cuyo remate tuvo lugar en el mencionado procedimiento hipotecario, en 24 de octubre de 1917, y cuya suma fué pagada por los compradores de la finca Florencio y Jacinto Polanco, quienes entraron en la misma y se aprovecharon de sus frutos desde la fecha de dicho remate;

Que el demandado es completamente insolvente; que su única propiedad es la mencionada finca, que está tasada para los efectos de la contribución insular en $19,202 y cuyo valor no excede de $25,000; que la mencionada finca está afecta a una hipoteca a favor del Banco Territorial y Agrícola de Puerto Rico por un valor no menos de $5,453.70 y la otra hipoteca a favor de Ricardo Alvarez González por $2,500; que aparte de estas deudas hipotecarias y los $26,776.22 adeudados por el demandado a los demandantes, dicho demandado también adeuda a N. Santini & Co. $7,000 y a Cipriano Manrique Gil $1,927.30;

Que dichos N. Santini & Co. y Cipriano Manrique han establecido demanda contra el demandado ante la corte inferior, en los casos numerados 7896 y 7952, y por órdenes de esta corte dictada en dichos casos se ha intentado embargar los $9,923 e intereses que en virtud de la mencionada

sentencia de esta corte los demandantes han sido condenados a pagar al demandado; que si los demandantes fueran obligados a pagar al demandado anticipadamente el montante de la referida sentencia, sin poder compensar el montante de la misma contra los $26,776.22 que el demandado adeuda a los demandantes, estarán sin remedio alguno para recobrar del demandado dichos $26,776.22 debido al estado de insolvencia en que se encuentra el demandado;

Que por los motivos alegados si la corte inferior permitiera al demandado a proceder con la ejecución de la sentencia dictada a su favor en 21 de mayo de 1919, habrá de causar a los demandantes pérdidas o daños de consideración, que serían irreparables, ya que los demandantes no tienen remedio alguno para suspender dicha ejecución en el mismo caso en que fué dictada ni en cualquier otro procedimiento en ley, y sí únicamente en una corte de equidad.

Como resultado de los hechos relacionados, se suplica en la demanda: primero, declarar que el demandado adeuda a los demandantes la suma de $26,776.22 con intereses a razón del diez por ciento anual desde el día primero de agosto de 1921 y ordenándole pagar a los demandantes la diferencia entre dicha suma y el montante de la sentencia dictada en el caso No. 5094, en 21 de mayo de 1919, por la suma de $9,923 más intereses legales desde la fecha de dicha sentencia y la suma que se fije en definitiva en concepto de costas; segundo, que dicte un auto de *injunction pendente lite* inhibiendo al demandado de proceder con la ejecución de la referida sentencia y suspendiendo todos los procedimientos sobre ejecución de la misma hasta tanto se resuelva en definitiva la cantidad que el demandado adeuda a los demandantes, y entonces en la sentencia definitiva que se dicte descontar de esta última suma el montante de la referida sentencia y suspender en definitiva todos los procedimientos para la ejecución de dicha sentencia; tercero, que se libre una orden dirigida al demandado requiriéndole a comparecer ante la corte

para exponer las razones por qué no debería ser inhibido en la forma solicitada; y, cuarto, que se conceda a los demandantes cualquier otro remedio que la corte, como una corte de equidad, crea justo y equitativo.

La corte inferior expidió la orden para que el demandado mostrara causas por las cuales no deba concederse la petición de *injunction.* Celebrada la vista comparecieron las partes y el demandado se opuso al *injunction* solicitado por los fundamentos siguientes: primero, por falta de competencia de la corte para conocer del *injunction* en este pleito número 8017, pues solamente la tiene para conocer de ella en el pleito No. 5094 sobre nulidad de procedimiento hipotecario e indemnización de perjuicios; segundo, por ser *res judicata,* pues esta misma cuestión fué levantada por las mismas partes demandantes contra el propio demandado en el pleito No. 5094 y la corte inferior denegó el *injunction,* sin que contra dicha sentencia se haya interpuesto recurso alguno; tercero, por prohibirlo expresamente el número primero del artículo 4 de la Ley sobre *Injunctions,* pues en este caso se trata de suspender un procedimiento judicial en tramitación y se fundan los demandantes en que de no acordárseles se ocasionarían perjuicios irreparables, y no en que sea necesaria para impedir una multiplicidad de procedimientos, único caso de excepción de la regla de aquel inciso; y, cuarto, por *litis pendencia,* por estar pendiente de resolución en la Corte de Distrito de los Estados Unidos para Puerto Rico la misma petición de *injunction* que aquí se hace a la corte inferior.

En 17 de febrero de 1922 la corte inferior declaró sin lugar la petición de *injunction* y contra esta decisión se ha establecido el presente recurso. Las partes presentaron alegatos y fueron oídas en la vista de la apelación.

El apelante señala que se han cometido por la corte inferior los errores siguientes:

1. Negar el *injunction pendente lite* solicitado.

2. Resolver que los demandantes pueden tener un remedio adecuado, rápido y eficaz por medio de la Ley sobre Efectividad de Sentencias, aprobada en primero de marzo de.1902.

3. Considerar aplicable a este caso la sección cuarta, inciso primero, de la Ley sobre *Injunctions,* aprobada en 8 de marzo de 1906; y

4. Aplicar indebidamente a este caso las resoluciones del Tribunal Supremo en los ˙casos de *Sucesión Iglesias* v. *Bolívar,* 11 D. P. R. 571; *Auffant* v. *Sucesión Ramos,* 23 D. P. R. 416, y *Ortiz* v. *Aguayo,* 26 D. P. R. 735.

Más bien podíamos decir que la impugnación de errores designados se refiere a las razones legales que tuvo la corte inferior para fundar ˙su resolución. Si creemos que su resolución está en armonía con la ley y es justa, y las razones en que se funda son erróneas, claro es que sería inmaterial e innecesario señalar dichas razones como errores, pero esa es una premisa que no podemos tener por sentada en absoluto como úna conclusión, y la mejor manera de ver si la resolución es justa y legal es examinar los errores señalados y si éstos son infundados, descubrir si existen otros motivos para sostener o no dicha resolución.

No seguiremos el mismo orden del apelante para discutir los errores señalados.

Empezaremos diciendo que tenemos dudas bien fundadas de que las decisiones que ha citado la corte inferior hayan sido de entera aplicación al presente caso.

El principio generalmente admitido por la jurisprudencia es que una corte no puede, médiante *injunction,* suspender las ejecuciones u órdenes de otra corte de igual y coordinada jurisdicción. Estee's, tomo 3, pág. 5. Esta es la teoría sostenida en esas decisiones. Pero tratándose de la misma corte, el estado legal de las cosas es diferente. A este efecto, en el caso de *Sucesión Iglesias* v. *Bolívar, supra,* esta corte se expresa en los siguientes términos:

"Con arreglo a la jurisprudencia de California era necesario entablar los procedimientos de esta naturaleza en la corte que dictara la sentencia o decreto, cuya ejecución se tratara de suspender, o en la corte en que se siguieran dichos procedimientos."

En la corte inferior están en curso los procedimientos que se tratan de suspender, y si procediera el *injunction* por otras razones la misma corte es la que tenía el poder jurisdiccional para decretarlo.

Se señala como otro error la indebida aplicación de la sección cuarta de la Ley sobre *Injunctions,* aprobada en 8 de marzo de 1906, que en su inciso primero textualmente dice:

"Sección 4.—No podrá otorgarse un *injunction:*

"1. Para suspender un procedimiento judicial que se estuviere tramitando al instituirse la acción en que se solicita el *injunction,* a menos que la restricción fuere necesaria para impedir una multiplicidad de tales procedimientos."

El error tal como lo discute el apelante es que el procedimiento judicial mencionado en el inciso transcrito de la Ley de *Injunctions* no comprende la ejecución de una sentencia.

Si lo que quiere significar el apelante es que la ejecución de una sentencia puede ser suspendida mediante *injunction,* no teníamos que hacer reparos a esa interpretación. Pero aún así, tenemos que examinar si se cumple la prevención de la disposición citada de que la suspensión no procede a menos que la restricción fuera necesaria para impedir una multiplicidad de procedimientos o si es necesario que concurran otros requisitos que nos conduzcan al mismo fin.   En este punto, Spelling, tomo primero, pág. 110, dice:

"Antes de la sentencia la prevención de una multiplicidad de pleitos y la existencia de reglas que impidan defensas en equidad, son los fundamentos en que de ordinario descansa la suspensión de los procedimientos legales.   Antes de la sentencia el fraude, error,

accidente y sorpresa raras veces son las bases en que descansa la solicitud para el remedio. Pero después que una acción en ley ha pasado al trámite de la sentencia, los derechos y relaciones de las partes en la misma son considerablemente alterados. El peligro de la multiplicidad de pleitos no existe más ni es importante, excepto en el solo caso de confusión o conflicto de reclamaciones de propiedad adquirida por ejecución  *  *  *  .''

De manera que la sección cuarta de la Ley de *Injunctions,* relativa a la posibilidad de la suspensión de los procedimientos por un *injunction,* ciertamente no se refiere estrictamente o de un modo restringido a las actuaciones que quedan terminadas con la rendición de la sentencia final sino también a las actuaciones después de la sentencia pero siempre que se alegue que se hubiera obtenido dicha sentencia mediante fraude, error, accidente o sorpresa, o que existiera la confusión o conflicto de reclamaciones de la propiedad que estuviere en ejecución. El caso de *Gregory* v. *Ford,* citado por el apelante, es una confirmación de la doctrina que acabamos de enunciar. En este caso se declara ''que las cortes de chancillería no intervienen sin razón con las sentencias dictadas en casos de ley. Es solamente para la prevención del fraude o para remediar perjuicios sustanciales o crasas injusticias.'' No obstante, la demanda no hace alegaciones que nos obligaran a examinar el caso bajo el aspecto que se acaba de tratar. No se alega fraude, equivocación, accidente o sorpresa, mediante cuyos medios el demandado obtuviera la sentencia que declaró la nulidad del procedimiento hipotecario y la condena del demandante a pagar al demandado la suma de $9,923 y costas. El hecho mismo que la Ley de *Injunctions* aprobada en 1906 adoptó aquella parte de los principios de equidad vigentes en los Estados Unidos en materia de *injunction* hace que interpretemos la sección cuarta de la Ley de *Injunctions* citada en consonancia con la doctrina que hemos referido.

El último error designado por el apelante es que la corte

erró al resolver que los demandantes podían tener un remedio adecuado, rápido y eficaz por medio de la Ley sobre Efectividad de Sentencias, aprobada en marzo primero de 1902.

Los demandantes examinan el último error bajo dos aspectos. Uno se refiere a que la Ley sobre Efectividad de Sentencias resultaría inadecuada porque otros acreedores han intentado embargar el crédito de $9,923 que por sentencia obtuvo el demandado, y para ello se fundan en que la ley citada no les protege en nada porque cualquier embargo que obtuvieran los demandantes tendría que ser posterior a dichos otros acreedores. Pero no nos es dable resolver nada en relación de que lo hayan intentado o hecho otros acreedores. Estos no son parte en este caso y no podríamos hacer declaración alguna en cuanto a ellos.

El otro aspecto de la cuestión que presentan los demandantes es que si el demandado ejecuta su sentencia por $9,923 sin esperar a la resolución del pleito principal en que se solicita este *injunction,* dichos demandantes quedarían sin remedio para compensar su reclamación, que es mayor, con la de $9,923 del demandado. Creemos, sin embargo, que no es el *injunction* el remedio adecuado en este caso. El remedio adecuado han podido encontrarlo los demandantes en la Ley sobre Aseguramiento de Sentencias, aprobada en marzo 1, 1902. La sección 2 de dicha ley establece las reglas a que se ha de ajustar el aseguramiento. Algunas de esas reglas surten el mismo efecto que una orden de *injunction* y llenan la misma finalidad, y además de especificarse en sus disposiciones los casos a que son aplicables, se establece por la regla (*h*) una regla general que cubre los casos que no estuvieren previstos por las reglas anteriores y en donde la corte inferior tiene un poder discrecional y equitativo para adoptar las medidas procedentes para asegurar la efectividad de una sentencia, caso de prosperar la acción que se ejercita.

Por las razones expuestas la resolución de la corte inferior debe confirmarse.

*Confirmada la resolución apelada.*

Jueces concurrentes:. Sres. Presidente del Toro y Asociados Wolf, Aldrey y Hutchison.